UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WILLIAM WELSH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-cv-02808-AGF |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff William Welsh was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner shall be reversed and the case remanded for further proceedings.

## BACKGROUND

Plaintiff, who was born on May 27, 1972, filed his application for benefits on July 30, 2014, alleging disability beginning December 22, 2012, due to fibromyalgia, osteoarthritis, brain injury, and herniated disc. Plaintiff's insured status under Title II of the Act expired on December 31, 2013. On September 17, 2014, Plaintiff's application was denied at the initial administrative level, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on September 26, 2014, at which Plaintiff, who was represented

by counsel, Plaintiff's wife, and a vocational expert ("VE") testified. By decision dated September 23, 2016, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, degenerative disk disease, obesity, hiatal hernia, cognitive disorder, mood disorder due to medical conditions, and obsessive compulsive disorder. The ALJ further found that from December 22, 2012 until December 31, 2013 (the date last insured), Plaintiff had the residual functional capacity ("RFC") to perform a less than full range of work at the sedentary exertional level, with the following limitations:

> [H]e could lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently. He could sit for 6 hours in an 8-hour workday, stand or walk for 2 hours in an 8-hour workday, and never climb ropes, ladders or scaffolds. He could have no exposure to unprotected heights or hazardous machinery. He could not drive a car as a regular part of the job.

Tr. 24-25. The ALJ also found that Plaintiff had the following non-exertional limitations:

> He was limited to simple, routine tasks, with minimal changes in work setting or duties. He could not perform fast-paced production work. He could have only occasional contact with the general public and could not handle customer complaints.

Tr. 25.

The ALJ next found that Plaintiff could perform certain unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (addresser, document preparer, press clippings cutter), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration, which was denied on September 29, 2017. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's RFC is erroneous because the ALJ failed to properly evaluate the medical opinion evidence provided by Plaintiff's primary care provider, Ying Du, M.D., and Plaintiff's psychiatrist, Frederick G. Hicks, M.D. Plaintiff asks that the ALJ's decision be reversed and that he be awarded benefits, or alternatively, that the case be remanded for further development of the record.

**Agency Records, Medical Records, Evidentiary Hearing, and ALJ's Decision**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts, which is contained in Plaintiff's amended brief (ECF No. 22), as amended by Defendant (ECF No. 28-1), and Defendant's Statement of Additional Facts (ECF No. 28-2), which Plaintiff has not opposed. Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th

Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work

activities. 20 C.F.R. § 404.1520(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Medical Records between December 22, 2012 and December 31, 2013**

Dr. Hicks began treating Plaintiff on March 28, 2012, following Plaintiff's hospitalization from March 22, 2012 through March 27, 2012 for adjustment of medication. Those hospitalization records reflect that Plaintiff suffered from chronic

seizure disorder, chronic pain, encephalopathy, major depression, anxiety disorder, and mood disorder due to a general medical condition, among others.

Between December 22, 2012 and December 31, 2013—the relevant period at issue—Dr. Hicks saw Plaintiff on multiple occasions. On January 15, 2013, Plaintiff reported feeling downcast when his application for disability was denied, feeling "useless" and "just depressed." Tr. 258. Dr. Hicks notes Plaintiff had good interaction with his wife, fair interaction with his son, and very little social activity. Plaintiff reported fair sleep with interval insomnia with bad dreams and pain. Dr. Hicks noted that Plaintiff's flow of thought was halting, but identified good general health and interest in family. These notations appear consistently throughout Dr. Hicks' examination notes during the relevant period.

On February 12, 2013, Plaintiff reported occasional crying spells, fair sleep, and a sense of feeling worthless. Plaintiff described his activity as getting up, doing a load of laundry, and watching some TV cartoons. Tr. 257. Dr. Hicks assessed global assessment of functioning ("GAF") score of 55.[1] Tr. 258.

On April 9, 2013, Plaintiff again reported feeling useless. He stated that he had been riding with his wife to work, walking outside on occasion, and watching TV with some enjoyment. However, he reported ongoing memory problems, and Dr. Hicks noted

---

[1] "GAF scores are not determinative of RFC, but they offer some evidence of a claimant's ability to function." *Hensley v. Colvin*, 829 F.3d 926, 933 n.3 (8th Cir. 2016) (citations omitted).

that Plaintiff's "Presidents O-C calculations" were good, six out of seven digits were repeated, and two out of three objects were recalled at two minutes with prompting.

On March 7, 2013, Plaintiff reported sleeping well, but still experiencing shaking and body pain. Plaintiff reported walking on occasion for exercise and cutting the grass. He had not been active socially or with volunteer work, but was looking forward to spending time at the pool with his wife. On May 7, 2013, he said he was "just trying [to] get out of bed." Tr. 255. On July 2, 2013, Plaintiff reported a recent hospitalization due to a hiatal hernia. Plaintiff stated he had helped his cousin lay down flooring, resulting in increased pain, and he reported limiting his activity. Dr. Hicks noted that Plaintiff's memory was intact.

On October 1, 2013, Plaintiff reported an incident in which he was jailed for firing a gun when "five guys came on my property and was threatening my family." He was jailed and deprived of medication, and Plaintiff reported feeling really confused. Dr. Hicks noted that Plaintiff's "Presidents O-C calculations" were fair, six out of seven digits repeated, and two out of three objects recalled at two minutes with prompting. Tr. 252.

At Plaintiff's last visit during the relevant time period, Plaintiff reported feeling anxious about "the legal matters." He stated he had poor sleep and interval insomnia with bad dreams. He reported no recent exercise, chest pains with anxiety, waking up with cold sweats and panic, and difficulty with his memory. Dr. Hicks noted that Plaintiff's memory was fair, reporting that his "Presidents 2-C" calculations were poor. Tr. 251.

7

Thereafter, it appears that Plaintiff's condition deteriorated, and Dr. Hicks later assigned a GAF score of 40 with a "very poor" prognosis.

Plaintiff treated with Dr. Du on January 11, 2013, shortly after the alleged onset date of disability. Plaintiff reported diffuse pain since 2009, insomnia, cognitive dysfunction, and difficulty with memory, attributed either to a prior brain trauma or a side effect of medication. Plaintiff also reported seeing Dr. Chen to get injections in his back every three weeks. Dr. Du's review of symptoms reflected that Plaintiff was fatigued and had anxiety, insomnia, headache, memory impairment, and tremors. A physical examination reflected that Plaintiff was uncomfortable and had positive trigger points. Dr. Du diagnosed Plaintiff with fibromyalgia and prescribed pain medication, trazodone, risperidone, and divalproex. On June 6, 2013, Plaintiff was admitted to the hospital for a hiatal hernia. He was discharged with instructions to see Dr. Du. However, the record lacks any indication of whether Plaintiff followed-up accordingly.

The record contains no other treatment records with Dr. Du. After the relevant period at issue, it appears that Plaintiff's medical condition deteriorated, and he regularly treated with Dr. Chen for treatment of his back pain.

**Medical Opinion Evidence**

Dr. Hicks prepared a mental medical source statement, opining that due to brain trauma, Plaintiff had a low IQ or reduced intellectual functioning. He noted marked impairments in Plaintiff's ability to remember locations and work-like procedures; understand and remember very short and simple instructions; maintain attention and

8

concentration for extended periods; perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal work-day and work-week, without interruptions from psychologically-based symptoms; interact appropriately with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting. Dr. Hicks concluded that Plaintiff was unable to work.

Dr. Du in his physical medical source statement reported that he had treated Plaintiff every four to six months over the last four years. He listed Plaintiff's symptoms as muscle pain, joint pain, fatigue, and memory loss. He opined that Plaintiff could walk continuously for less than one block, could sit for ten minutes at a time before needing to get up, and could stand for five minutes at one time before needing to sit down. He opined that Plaintiff could stand or walk for less than two hours in an eight-hour workday, and sit for about two hours total. He also indicated that Plaintiff could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift twenty to thirty pounds. Dr. Du stated that Plaintiff should never twist, stoop, crouch, squat, or climb ladders, and that he could occasionally climb stairs. He noted significant limitations with reaching, handling, and fingering.

**RFC Finding**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the

9

workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.*

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). And the court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). However, "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). Here, the ALJ did not sufficiently do so in several respects.

For example, contrary to Dr. Hicks' medical assessment, the ALJ concluded that "[i]n activities of daily living, the claimant had mild restriction" and that he had only "moderate difficulties" in social functioning. In support, the ALJ cites to Plaintiff doing laundry, helping his cousin lay flooring, mowing his grass, and the fact that Plaintiff "enjoyed spending time in the pool with his family." However, this is a selective and stilted reading of the record. The treatment records—consistent with Plaintiff's wife's testimony—are replete with Dr. Hicks' references to the fact that Plaintiff is lonely and isolated at home, has limited activity, such as doing laundry and watching TV cartoons, and very little social activity.

Moreover, the ALJ's record reference to Plaintiff enjoying spending time in the pool with his family misstates the record. Dr. Hick's notes in fact state:

He has good interaction with his wife. He continues to struggle with his

memory. He has some enjoyment with spending time with his wife and spending time in the pool.

Tr. 254. And other records reference that he and his wife "lay around the pool," and that he walks in the pool. Tr. 255, 262. Elsewhere, Dr. Hick's treatment records also make clear that Plaintiff has good interaction with his wife, but only with his wife. He repeatedly reports "fair" interaction with his son, and the treatment notes reflect little if any interaction with anyone else, apart from the single, stray reference to helping his cousin with flooring.

Similarly, the ALJ disregards Dr. Hicks' conclusions of marked difficulty with respect to concentration, persistence, or pace, noting that "[a]lthough he reported memory difficulties, he watched television (Exhibit C2f, page 12)." The Court is hard-pressed to understand how the fact that Plaintiff watched television undercuts the treating physician's opinion of marked difficulties, especially as the notation notes that Plaintiff watches TV cartoons. Tr. 257. Indeed, while a few treatment notes reflect Plaintiff's memory being intact, the treatment notes consistently note "flow of thought halting, limited," and "insight and judgment fair," with other references to Plaintiff's flow of thought as "simplistic." Moreover, other records include references and testing results documenting memory problems.

"[T]he Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough evidence," and "may also assign little weight to a treating physician's opinion when it is

either internally inconsistent or conclusory." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). However, an ALJ commits legal error in substituting his or her own evaluation a physician's treatment notes in place of the physician's own medical judgment. *Briggs v. Astrue*, No. 11-CV-6039-NKL, 2012 WL 393875, at *6 (W.D. Mo. Feb. 6, 2012) ("Rather, the ALJ's determination appears to be based upon selective interpretation of isolated comments which downplayed the effects of [the claimant's] impairments without taking into Dr. McGuire's entire treatment record into context."). Here, it appears the ALJ did precisely that.

The ALJ had no other medical assessments she found to be better or more thoroughly supported, and Dr. Hicks' opinions are neither internally inconsistent nor conclusory. *See, e.g., Ross v. Apfel*, 218 F.3d 844, 848-49 (8th Cir. 2000) (holding that where a claimant's pain level varied and he had good days and bad days, variation in treatment notes indicating that a claimant's condition "at certain times is more severe than others" is not a reason to discount a treating physician's opinions regarding disabling pain, and likewise, a claimant's "ability to perform . . . limited [daily] activities (with difficulty) on his good days is not inconsistent with his testimony that on his bad days, he cannot function at all"). Accordingly, the ALJ committed legal error in substituting her own evaluation of Dr. Hicks' treatment notes in place of his own medical judgment.

Moreover, the RFC is unsupported by the record. The ALJ opined that Dr. Du's medical source statement included physical limitations that the ALJ characterized as "extreme." Specifically, the ALJ opined that those extreme limitations were inconsistent

12

with his treatment notes, including Plaintiff's lack of treatment for degenerative disc disease during the relevant period. The ALJ concluded that while the opinion may accurately represent the claimant's limitations at the time the opinion was issued, the record did not support the existence of those limitations during the relevant period.

The RFC limits Plaintiff to lifting, carrying, pushing, or pulling 10 pounds occasionally and less than 10 pounds frequently; sitting for 6 hours in an 8-hour workday; and stand or walk for two hours in an 8-hour workday. These limitations are considerably less restrictive than those recommended by Dr. Du.

An RFC calculation must be supported by some medical evidence. *Mullins v. Colvin*, No. 13-3407-CV-DPR, 2015 WL 58483, at *2 (W.D. Mo. Jan. 5, 2015). Although the ALJ provided reasons for her decision not to adopt the opinions of Dr. Du, the record is devoid of any other medical evidence to support the physical limitations in Plaintiff's RFC. The ALJ was under a duty to fully develop the record so it contained the opinions necessary to properly determine the claimant's RFC.

Lastly, the ALJ erred when she failed to assign a weight to Dr. Du's opinion. *See Ellis v. Barnhart*, 392 F.3d 988, 998 (8th Cir. 2005) ("The ALJ must give good reasons for the weight accorded to a treating physician's opinion."). The ALJ's discussion of Dr. Du's treatment records does not make clear what weight the ALJ assigned to the opinion, *Kreysman v. Astrue*, No. 09-00507-CV-W-NKL, 2010 WL 670248, at *5 (W.D. Mo. Feb. 22, 2010), in that the ALJ characterizes Dr. Du's conclusions as "extreme" while incorporating some of his suggested limitations in the RFC. Thus, the Court remands the

case to the Commissioner for expansion of the record to include the opinions of medical sources as to Plaintiff's ability to perform in the workplace, assign weight to the medical opinions contained in the record, and for subsequent re-evaluation of Plaintiff's RFC.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED and the case is REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

_/s/ Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 4th day of March, 2019.